IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| CONTAINERPORT GROUP INC., an Ohio Corporation,<br><br>        Plaintiff<br><br>v.<br><br>JEREMY LAW, an individual, AND PASCHALL TRUCK LINES, INC., a Kentucky Corporation.<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>) CASE NO.   1:19-cv-00063<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**VERIFIED COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF**

Plaintiff ContainerPort Group Inc. ("CPG"), for its Verified Complaint for Injunctive and Other Relief against Defendants Jeremy Law ("Law") and Paschall Truck Lines, Inc. ("Paschall"), states as follows:

**NATURE OF ACTION**

1. This is an action to, among other things, enjoin Law from continuing to violate his Confidentiality and Non-Solicitation Agreement with CPG by misappropriating CPG's confidential information and trade secrets and soliciting CPG's employees and customers.

**PARTIES**

2. CPG is a corporation organized under the laws of Ohio with its principal place of business located at 1340 Depot Street, Suite 200, Cleveland, Ohio, 44116. CPG is a citizen of the state of Ohio.

3.  Law is an individual and a former employee of CPG. He is currently an employee of Paschall. He resides at 19300 Greeno Rd., Fairhope, Alabama, 36532. Law was a resident of Alabama during his employment with CPG, and is presently employed in Alabama. Law is domiciled in Alabama and is a citizen of Alabama.

4.  Paschall is a corporation organized under the laws of Kentucky with its principal place of business located at 3443 US Highway 641 S., Murray, Kentucky, 42071. Paschall conducts business in Alabama including in areas in the Southern District of Alabama. Paschall is a citizen of the state of Kentucky.

## JURISDICTION AND VENUE

5.  The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship, and the amount in controversy is over $75,000 exclusive of interest and costs. Jurisdiction is also proper in this Court pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States, namely the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.*

6.  CPG seeks, among other remedies, injunctive relief pursuant to Federal Rule of Civil Procedure 65(a).

7.  Venue properly lies in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action occurred within the Southern District of Alabama, and Defendants are subject to personal jurisdiction in this District.

## FACTS

8.  CPG is a company that provides transportation and logistics services.

9.  CPG employed Law as its Director of Logistics until his resignation on November 9, 2018.

10. Prior to his employment with CPG, Law was employed by ASF Intermodal, LLC ("ASF"). During his employment with ASF, Law signed a Confidentiality and Non-Solicitation Agreement (hereinafter "Agreement") (a true and correct copy of which is attached hereto as Exhibit A.)

11. The Agreement provides that Law's covenants are in consideration of Law's employment and/or continued employment, and for other valuable consideration. (Ex. A.)

12. On December 14, 2017, CPG purchased from ASF all assets, rights, and claims of ASF, including the Agreement, which was assigned to CPG. CPG assumed ASF's rights and obligations including all contractual rights in employment agreements.

13. The Agreement signed by Law specifically allowed for its assignment in Paragraph VI, which states: "ASF may assign its rights and obligations under this Agreement in whole or in part to any one or more affiliates, related entities, successors, purchasers, or assigns. The obligations of Employee shall redound to the benefit of ASF's successors and assigns." (Ex. A at ¶ VI.) Therefore, CPG now stands in the place of ASF with respect to the Agreement.

14. As a Director of Logistics for CPG, Law's responsibilities included building relationships with customers, working with CPG's staff to ensure customers were satisfied with CPG's services and value, identifying and determining pricing, competitive advantages and disadvantages, facilitating new areas of growth, and protecting CPG's business interests, among other things.

15. Law communicated and interacted directly with CPG's customers.

16. CPG provided Law with confidential and proprietary information so that he could perform his job duties and develop and maintain relationships with CPG's customers.

3

17. The confidential and proprietary information included, but was not limited to, pricing and rate information, non-public financial information, customer and carrier lists and identities, profit and revenue information, customer volume information, and proprietary agreements. CPG made significant efforts to maintain the confidentiality of said information. Such efforts included executing contracts like Law's Agreement. CPG also maintains the secrecy of its information by impressing upon its employees the importance of keeping its proprietary information confidential.

18. The Confidentiality and Non-Solicitation Agreement signed by Law contains a covenant obligating Law to return all CPG property and confidential information to CPG upon separation of employment or if otherwise requested. It also contains covenants not to solicit CPG's employees or CPG's customers for a period of one year following separation of employment.

19. The Confidentiality section of the Agreement states in Paragraph II(c): "Employee agrees that s/he will, during his or her employment with ASF and at all times thereafter, hold and maintain Confidential Information in the strictest confidence and not disclose it to any third party or make use of the Confidential Information for any purpose other than the proper performance of his or her employment responsibilities." (Ex. A at ¶ II(c).)

20. Law further agreed in Paragraph II(d): "In the event of termination of employment, whether voluntary or involuntary, employee shall promptly deliver to ASF all Company property and any type of documentation (and all copies of such information) in any way relating to Confidential Information, of any type or nature (including without limitation records in computer readable form)." (Ex. A at ¶ II(d).)

21.     The non-solicitation of customers and employees portion of the Agreement provides in Paragraph III(a): "Employee agrees that during his or her employment by ASF, and for a period of one (1) year after such employment terminates for any reason, whether voluntary or involuntary, Employee will not, either directly or indirectly, for Employee's own account or as an agent, independent contractor, stockholder, employer, employee or otherwise in connection with any other person or entity, engage in the following activities in any state in which ASF has an office: (i) Solicitation of any person or entity that is a current customer, merchant, lead source, capital source or account of ASF for the purpose of soliciting or selling services and/or goods in direct competition with ASF; (ii) Requesting, inducing or attempting to influence any customer of ASF or supplier of services to ASF to curtail or cancel any business it transacts with ASF; (iii) Solicitation for employment any employee or independent contractor of ASF." (Ex. A at ¶ III(a).)

22.     Law also agreed to inform any future employer of his obligations under the Agreement. Law's Agreement states in Paragraph III(b) that "Employee acknowledges and agrees that s/he is obligated to inform any future employers of the non-solicitation obligations set forth in this Agreement. Employee consents and agrees that following the termination of Employee's employment, whether voluntary or involuntary, ASF may contact any of Employee's subsequent or prospective employers during the one (1) year post-employment period to advise the subsequent or prospective employer of Employee's continuing obligations under this Agreement." (Ex. A at ¶ III(b).)

23.     On November 9, 2018, Law resigned from his employment at CPG.

24.     In the days immediately preceding his resignation, Law violated Paragraphs II(c) and (d) by forwarding from his work email address to his personal email address eighteen (18)

5

emails which contain CPG's confidential information and trade secrets including customer information, forecasts of expenditures, rates paid and lanes used by specific customers, a new customer bid file with rate quotes on potential lanes, and CPG's carrier and customer onboarding packets. The secrecy of this type of information is vital for CPG, which is a freight broker and therefore depends on beating its competitors through customer relationships, prices, and logistics.

25. These emails were sent by Law from his CPG email address to his personal email address on:

- November 2, 2018 at 5:03 PM
- November 4, 2018 at 7:25 PM
- November 4, 2018 at 7:26 PM (4 emails)
- November 4, 2018 at 7:27 PM (2 emails)
- November 5, 2018 at 9:34 AM
- November 5, 2018 at 11:54 AM (2 emails)
- November 5, 2018 at 11:59 AM
- November 5, 2018 at 5:01 PM
- November 7, 2018 at 2:37 PM
- November 7, 2018 at 3:30 PM
- November 9, 2018 at 7:58 AM
- November 9, 2018 at 9:21 AM
- November 9, 2018 at 1:02 PM

26. Immediately upon noticing Law's theft, CPG's counsel wrote a letter to Law putting him on notice of his breach and demanding that he refrain from using or sharing the information in the stolen emails. (Letter from CPG's counsel to Law dated November 12, 2018, a true and correct copy of which is attached as Exhibit B.)

27. Law admitted his conduct and agreed to delete the emails from his personal email account and then delete them from his trash bin. (Affidavit of Jeremy Law, a true and correct copy of which is attached as Exhibit C.)

28. Law became employed by Paschall immediately after leaving CPG.

29. Paschall provides transportation and logistics services, and is a competitor of CPG.

30. After Law's theft of confidential information and trade secrets, CPG obtained information indicating that Law was also violating his Agreement in other ways.

31. Shortly after Law began working for Paschall, at least two former CPG employees, Heather Davis and Neil Strong (collectively, the "recruited employees"), left CPG and began working for Paschall.

32. The recruited employees are uniquely essential to CPG's business. Strong was a Branch Manager at CPG in Detroit, Michigan, and Davis was an Account Manager/Team Leader for CPG in Mobile, Alabama. Strong and Davis were primary points of contact with CPG's customers. In addition to having valuable customer relationships, they had access to and used CPG's confidential information and trade secrets, such as pricing and rate information, non-public financial information, customer and carrier lists and identities, profit and revenue information, customer volume information, and proprietary agreements. Like Law, Strong and Davis each had a Confidentiality and Non-Solicitation Agreement.

33. On January 4, 2019, upon learning of Law's solicitation of CPG employees, counsel for CPG wrote Law's attorney another letter instructing him to cease and desist such activities and to preserve all evidence, electronic or otherwise, pertaining to his violations of the Agreement. (Letter from CPG's counsel to Law's counsel, a true and correct copy of which is attached as Exhibit D.)

34. Also on January 4, 2019, counsel for CPG wrote the President of Paschall, David Gibbs, to advise him that Paschall's employee Law was violating his contractual obligations to CPG and to immediately cease and desist any involvement of the company in his actions. (Letter

7

from CPG's counsel to Paschall, a true and correct copy of which is attached as <u>Exhibit E</u>.) Counsel for CPG also instructed Paschall to preserve all relevant evidence. (*Id.*)

35. Law has also violated his covenant not to solicit CPG's customers. Since leaving CPG, Law has attempted to solicit CPG customers Archer Daniels Midland and Aarons Furniture. Both are CPG customers now and were CPG customers while Law was employed with CPG.

36. Law's actions directly violate his Agreement with CPG. Paschall's actions in continuing to employ Law, Davis, and Strong despite having actual knowledge of Law's Agreement with CPG and his breach thereof, and upon information and belief, its wanton disregard of the foregoing, constitute intentional interference with Law's Agreement. Paschall has acted for its own benefit at the expense of the non-breaching party and its direct competitor, CPG. Paschall has taken the position that Law's Agreement is invalid, and Paschall has threatened that any efforts by CPG to enforce its Agreement will be considered tortious.

37. Defendants' wrongful actions have and will continue to disrupt, interfere with, and harm CPG's business operations.

38. Because of Defendants' actions, CPG is suffering irreparable harm and injury through its loss of employees, loss of goodwill, reputational harm, financial loss, and anticipated loss of business.

39. Law's Agreement provides that if he "has violated any part of this Agreement in any material respect during the one-year period, such period will be extended for the time Employee is in violation of the Agreement." (Ex. A at ¶ III(c).)

40. Pursuant to the Agreement, Law agreed to reimburse CPG for reasonable legal fees and expenses incurred in enforcing the provisions of the Agreement. (Ex. A at ¶ IV.)

## COUNT I
## INJUNCTIVE RELIEF
### (Law and Paschall)

41. CPG repeats and incorporates the allegations set forth in the preceding paragraphs as if fully set forth herein.

42. By virtue of the allegations set forth herein, CPG has demonstrated that it is likely to succeed on the merits of its claims and that a balancing of the equities favors the issuance of an injunction against Defendants.

43. Unless Law is temporarily, preliminarily, and/or permanently enjoined from violating his Agreement, and unless Law and Paschall are enjoined from engaging in the tortious conduct described herein, CPG will be irreparably harmed by its loss of employees, loss of goodwill, reputational harm, financial loss, and anticipated loss of business.

44. Present economic loss is unascertainable at this time, and future economic loss is presently incalculable.

45. CPG has no adequate remedy at law.

WHEREFORE, CPG respectfully requests that the Court enter an Order

    a. Temporarily, preliminarily, and permanently (for a period of one year from the time Law ceases violating his Agreement) enjoining Law from directly soliciting CPG's customers or employees, or indirectly assisting Paschall in soliciting CPG's customers or employees;

    b. Temporarily, preliminarily, and permanently enjoining Law from directly or indirectly using or disclosing CPG's confidential information;

    c. Enjoining Paschall from tortiously interfering with CPG's Agreement with Law by assisting, encouraging, or participating in any breach of the Agreement by Law.

    d. Entering a declaratory judgment in favor of CPG that the Agreement's provisions regarding confidential information and solicitation of customers and employees are valid and enforceable;

    e. Exercising the Court's equitable power to, pursuant to the Agreement, extend the Agreement's terms by a duration of one (1) year from the last violation thereof;

    f. Awarding CPG its reasonable attorney's fees and expenses incurred in enforcing the Agreement; and

    g. Granting CPG such additional relief as is just and proper.

## COUNT II
## TORTIOUS INTERFERENCE WITH CONTRACT
### (Paschall)

46. CPG repeats and incorporates the allegations set forth in the preceding paragraphs as if fully set forth herein.

47. CPG has a valid and enforceable Agreement with Law.

48. At all material times, Paschall has had knowledge of Law's Agreement.

49. Law has knowledge of the recruited employees' agreements.

50. Law intentionally breached his Agreement in multiple ways as articulated above.

51. Law's breach of his Agreement is, upon information and belief, partially attributable to Paschall's conduct in interfering with the Agreement.

52. Upon information and belief, Paschall has interfered with the Agreement, and such interference was intentional and improper.

53. As a result of Law and Paschall's conduct, CPG has suffered damages.

WHEREFORE, CPG respectfully requests that the Court enter an Order:

    a. Granting the injunctive and declaratory relief requested in connection with Count I;

    b. Awarding CPG damages in an amount to be determined at trial;

    c. Awarding CPG punitive damages;

    d. Awarding CPG's attorney's fees and costs of suit; and

    e. Granting CPG such additional relief as is just and proper.

## COUNT III
## BREACH OF CONTRACT
### (Law)

54. CPG repeats and incorporates the allegations set forth in the preceding paragraphs as if fully set forth herein.

55. Law's Agreement with CPG is a valid and enforceable contract.

56. In his Agreement, Law agreed not to take confidential CPG information with him when his employment ended.

57. In his Agreement, Law agreed not to solicit employees or customers of CPG during the stated time period.

58. Law has breached his Agreement.

59. As a direct and proximate result of Law's wrongful conduct, CPG has suffered and will continue to suffer irreparable harm, as well as monetary damages insufficient to fully remedy CPG.

WHEREFORE, CPG respectfully requests that the Court enter an Order

   a. Granting the injunctive and declaratory relief requested in connection with Count I.

   b. Exercising the Court's equitable power to, pursuant to the Agreement, extend the Agreement's terms by a duration of one (1) year from the last violation thereof;

   c. Awarding CPG compensatory damages in an amount to be determined at trial;

   d. Awarding CPG reasonable attorney's fees and costs incurred in connection with enforcing its Agreement; and

   e. Granting CPG such additional relief as is just and proper.

## COUNT IV
## ACTUAL AND THREATENED MISAPPROPRIATION OF TRADE SECRETS IN VIOLATION OF THE ALABAMA TRADE SECRETS ACT
### (Law)

60. CPG repeats and incorporates the allegations set forth in the preceding paragraphs as if fully set forth herein.

61. The confidential information wrongfully taken by Law – including customer information, forecasts of expenditures, rates paid and lanes used by specific customers, CPG's carrier and customer onboarding packets, and customer bid information – constitutes "trade secrets" under the Alabama Trade Secrets Act because the information was or is: used or intended for use in a trade or business; included or embodied in a compilation, formula, pattern, and/or other category; not publicly known or generally known in the trade or business; not readily ascertained or derived from publicly available information; is the subject of efforts that are reasonable under the circumstances to maintain secrecy; and has significant economic value.

62. Upon information and belief, Law has disclosed or used CPG's trade secrets, without a privilege to do so.

63. Upon information and belief, Law's disclosure or use of CPG's trade secrets constitutes a breach of confidence reposed in law by CPG.

64. Given that Law stole trade secrets days before he resigned form CPG, and has solicited employees and customers in violation of the Agreement, there is a continued threat of misappropriation of CPG's trade secrets.

WHEREFORE, CPG respectfully requests that the Court enter an Order:

    a. Granting the injunctive and declaratory relief requested in Count I;

    b. Awarding CPG damages in an amount to be determined at trial;

    c. Awarding CPG exemplary damages pursuant to Ala. Code § 8-27-4(a)(3);

    d. Awarding CPG reasonable attorney's fees pursuant to Ala. Code § 8-27-4(a)(2); and

    e. Granting CPG such additional relief as is just and proper.

## COUNT V
### VIOLATION OF THE FEDERAL DEFEND TRADE SECRETS ACT
(Law)

65. CPG repeats and incorporates the allegations set forth in the preceding paragraphs as if fully set forth herein.

66. The confidential information wrongfully taken by Law constitutes trade secrets because the information has independent economic value, was lawfully owned by CPG, and CPG took reasonable measures to keep it secret.

67. CPG's trade secrets are related to products and services used in interstate commerce.

68. Law misappropriated the information through improper means. Law's misappropriation of the information was willful and malicious.

69. Upon information and belief, Law has used or disclosed the information despite a duty to maintain its secrecy.

WHEREFORE, CPG respectfully requests that the Court enter an Order:

    a. Granting the injunctive and declaratory relief requested in Count I;

    b. Awarding CPG damages in an amount to be determined at trial;

    c. Awarding CPG exemplary damages pursuant to 18 U.S.C. § 1836(b)(3)(C);

    d. Awarding CPG reasonable attorney's fees pursuant to 18 U.S.C. § 1836(b)(3)(D); and

    e. Granting CPG such additional relief as is just and proper.

## VERIFICATION

I, Joey Palmer, Vice President of Truckload & Logistics for ContainerPort Group, verify under penalty of perjury that the facts set forth in the foregoing Verified Complaint are true and correct to the best of my knowledge and recollection.

Executed this 11th day of February, 2019.

_____
Joey Palmer
Vice President of ContainerPort Group

Respectfully submitted,

/s/ *W. CRAIG HAMILTON*
W. CRAIG HAMILTON
chamilton@mcdowellknight.com
J. BLAIR NEWMAN, JR.
bnewman@mcdowellknight.com
MCDOWELL KNIGHT ROEDDER & SLEDGE, L.L.C.
RSA Battle House Tower
11 North Water Street, Suite 13290
Mobile, Alabama 36602
(251) 432-5300
(251) 432-5303 facsimile
*Attorneys for ContainerPort Group Inc.*

**CERTIFICATE OF SERVICE**

PLAINTIFF WILL SERVE DEFENDANT JEREMY LAW BY PRIVATE PROCESS SERVER AT THE BELOW ADDRESS:

Jeremy Law
19300 Greeno Rd.
Fairhope, AL 36532


PLAINTIFF WILL SERVE DEFENDANT PASCHALL TRUCK LINES, INC. BY CERTIFIED MAIL AT THE BELOW ADDRESS:

Paschall Truck Lines, Inc.
3443 US Highway 641S
Murray, Kentucky, 42071